JOURNAL ENTRY AND OPINION
{¶ 1} Defendant appeals his convictions by a jury for aggravated robbery in violation of R.C. 2911.01.[1] Those convictions also carried two three-year firearm specifications.[2] Defendant also appeals his conviction for having a weapon under disability[3] in violation of R.C. 2923.13(B).[4] Lastly, defendant argues that his sentences are contrary to law.
 {¶ 2} In the early morning hours of August 11, 2004, defendant robbed and then fled the HP Hanini mini-mart in Cleveland, Ohio. The store's two employees were held at gunpoint while defendant ordered them to empty their cash registers into a plastic bag. The robbery was captured on the store's videotape camera.
 {¶ 3} Defendant was arrested. Following his convictions and sentencing, he filed this appeal. Defendant presents ten assignments of error. Defendant's first assignment of error states as follows:
I. DUE PROCESS IS VIOLATED WHEN THE APPELLANT WAS CONVICTED OF A CRIME ON WHICH THE STATE FAILED TO OFFER ANY EVIDENCE WHATSOEVER TO PROVE AN ESSENTIAL ELEMENT THEREOF.
 {¶ 4} Defendant argues that the state did not prove all the elements necessary to convict him of having a weapon under disability. Specifically, defendant claims that under R.C.2923.13, the statute defining the offense, the state never proved beyond a reasonable doubt "that less than five years elapsed from the end of Appellant's confinement or from termination of post-release [sic] control." Defendant's Brief on Appeal, at 8.
 {¶ 5} Contrary to defendant's argument, however, the version of R.C. 2923.13 that defendant relies on was not in effect when he was indicted on August 25, 2004. Defendant mistakenly relies on language of the 1996 version of the statute,[5] which was subsequently amended.
 {¶ 6} In April 2004, months before defendant's indictment, the applicable version of R.C. 2923.13 was amended as follows:
(A) Unless relieved from disability as provided in Section2923.14 of Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordinance, if any of the following apply:
(1) The person is a fugitive from justice.
(2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.
(3) The person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for commission of an offense that, if committed by an adult, would have been an offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.
(4) The person is drug dependent, in danger of drug dependence, or a chronic alcoholic.
(5) The person is under adjudication of mental incompetence.
(B) Whoever violates this section is guilty of having weapons while under disability, a felony of the third degree.
 {¶ 7} The 2004 version of R.C. 2923.13 does not require the state to prove beyond a reasonable doubt that less than five years passed from the end of defendant's incarceration or the end of postrelease control. Under the relevant 2004 statutory language, defendant's mere possession of a firearm during the commission of the subject robbery triggers the statute. Accordingly, defendant's first assignment of error is without merit.
II. WHERE EVIDENCE IS PRESENTED TO SUPPORT AN ALIBI AND THE ACCUSED RELIES UPON IT AS HIS SOLE DEFENSE, THE COURT COMMITS REVERSIBLE ERROR IN FAILING TO INSTRUCT THE JURY ON THE DEFENSE OF ALIBI.
 {¶ 8} Defendant argues that the trial court committed plain error when it failed to provide the jury with an alibi instruction.
 {¶ 9} In Ohio, an alibi instruction is considered a "special instruction" which must be requested by a party. So long as the requested alibi instruction is correct and timely presented, it must be included, at least substantively, in the court's general instructions to the jury. State v. McCarthy (1992),65 Ohio St.3d 589, 593, 1992-Ohio-98, 605 N.E.2d 911.
 {¶ 10} "Where a defendant files a timely notice of alibi, presents evidence to support the contention, and relies on alibi as his sole defense, the trial court has a statutory duty, pursuant to R.C. 2945.11, to charge the jury on alibi." State v.Frost, Montgomery App. No. 20588, 2005-Ohio-5510, ¶ 35.
 {¶ 11} In the case at bar, after the state rested its case, defendant voluntarily proceeded pro se with the defense in his case. Just before he discharged his trial counsel, however, the following statements were made by his attorney about defendant's alibi witness:
MR. RUDY: Yes, Judge. Judge, for the first time today, I was able to actually speak to a potential witness. After having spoken to that witness, I believe it will only further damage the case or defense for Mr. Nicholson.
"* * *
Your Honor, if I may, just so the record will be perfectly clear. The one witness that Mr. Nicholson provided to me was a man by the name of Phil Evans. As I indicated, despite numerous phone calls to his residence, today's the first time I had an opportunity to discuss with him this individual that my client indicates is an alibi witness.
Having spoken to Mr. Evans, Mr Evans was not anywhere near Mr. Nicholson at the time of the act. Again it would only further damage his defense to call him.
Tr. 303-305.
 {¶ 12} According to Farraj, one of the victims, defendant robbed the store at approximately 1:30 a.m. on August 11th. Tr. 219. Farraj was on break and sitting outside on a curb when he saw an unusual late model blue Cadillac drive from the fuel pump area to the side of the parking lot.
 {¶ 13} As the Cadillac sat in the lot, Farraj saw a woman, later identified as Jessie Johnson, leaning inside the vehicle speaking to the driver. When Farraj returned to his cash register inside the store, he was surprised by defendant who stood next to him and pointed a gun into his side. Defendant told Farraj, "You better don't open your mouth." After defendant ordered him to open the cash register, Farraj emptied cash into a plastic bag. Defendant then proceeded to the next register where employee Abdullah Jaffal was standing.
 {¶ 14} Jaffal worked the third-shift on August 11th, from midnight on the 10th to 7:00 a.m. on the 11th. When defendant moved from Farraj's register to Jaffal's, defendant did not put the gun to Jaffal's body as he had done with Farraj. Tr. 234. Instead, defendant waved the gun to direct Jaffal to empty his register into the same plastic bag.
 {¶ 15} Francisco Plata was also working on the night of August 11th. He testified that he saw the man who robbed the store that night. He also stated that the robbery occurred "from like around 11 to like 2:00 in the morning." Tr. 297. Plata picked defendant's photo out of the photo array shown to him by police. And, at trial, he again identified defendant as the man who robbed the store on August 11, 2004.
 {¶ 16} According to Farraj, defendant fled the store, got into the same blue Cadillac he had been sitting in just moments before the robbery, and sped away from the scene. Upon arrival, police obtained videotape photographs of the robbery from the mini-mart's internal cameras. Farraj confirmed that the photos were printed at 2:28 a.m. on the morning of the 11th.
 {¶ 17} Phillip Evans testified as defendant's alibi witness. He stated that defendant was with him from late at night on August 10th to early on the 11th. He arrived at defendant's on the 10th at approximately 5:00 p.m. The two men spent the evening together putting a radiator in the Cadillac. According to Evans, he left sometime close to or just after midnight. Evans did not see defendant again until sometime around 2:00 p.m. in the afternoon on the 11th.
 {¶ 18} From this record, we agree with the defense attorney's position before he was replaced. Evans' testimony did nothing to help defendant establish an alibi. According to the testimony of Farraj, Jaffal, and Plata, the robbery occurred sometime between midnight, after Jaffal arrived at the store and 2:00 a.m. Contrary to defendant's claim, Evans' testimony highlights the fact that he was not with defendant during the time of the robbery.
 {¶ 19} Because Evans' testimony did not support defendant's alibi, the trial court did not err in not giving the jury an alibi instruction. Defendant's second assignment of error fails.
III. THE VERDICTS FINDING THE APPELLANT GUILTY VIOLATED DUE PROCESS WHEN THEY WERE BASED ON EVIDENCE THAT CANNOT SURVIVE MEANINGFUL SCRUTINY.
 {¶ 20} Defendant argues that the state did not present sufficient evidence to prove that he was the person who robbed HP Hanini or that he used a firearm to effectuate the crime. According to defendant, "[n]one of the officers that testified said they saw [him] with a gun." Defendant's Brief at 12. We disagree.
 {¶ 21} "We review a sufficiency challenge de novo, State v.Thompkins, 78 Ohio St.3d 380, 386, 1997 Ohio 52, 678 N.E.2d 541, to determine "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Short, Cuyahoga App. No. 83804, 2005-Ohio-4578, ¶ 17, citing State v. Stallings,89 Ohio St.3d 280, 289, 2000-Ohio-164, 731 N.E.2d 159, quoting Jacksonv. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781,61 L.Ed.2d 560.
 {¶ 22} Before the robbery in the case at bar, Farraj saw Jessie Johnson leaning into defendant's car as it sat in the parking lot. Farraj recognized her from the neighborhood. Johnson testified that defendant's Cadillac caught her eye, and she commented to defendant how nice the car was. Defendant invited her to sit in the car while they talked. While Johnson sat in the car, defendant told her that he was going into the store to "check it out" and that he then reached for a gun located at the side of his seat. Johnson knew it was an automatic firearm. Nervous that defendant had a gun, Johnson walked away and went to a friend's house. As Johnson was leaving her friend's, she saw defendant rapidly walking away from the mini-mart with a bag in his hand, get into the Cadillac, and speed away.
 {¶ 23} Six days later, on August 17, 2004, defendant was arrested at his home for the crimes committed at the mini-mart. The late model Cadillac identified by Farraj and Johnson was parked in the driveway.
 {¶ 24} Farraj and Jaffal were the two men robbed at gunpoint by defendant. They both testified that they clearly saw defendant's face. Defendant was so close to Farraj that he felt a gun being held at his side. State's Exhibit 5, which is a still photograph printed from the store's video camera, shows defendant pointing his gun at Jaffal. And, when Jaffal was told to empty his register, he was looking right at defendant. Francisco Plata also identified defendant as the man who robbed the store on the 11th.
 {¶ 25} From this record, the state produced sufficient evidence to prove beyond a reasonable doubt that defendant was the person who robbed the mini-mart. The next question is whether the state produced sufficient evidence that defendant used a firearm in the commission of the robbery.
 {¶ 26} R.C. 2923.11 defines a firearm as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." This definition includes "an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." R.C.2923.11(B)(1).
 {¶ 27} According to the Ohio Supreme Court, a firearm specification can be proven beyond a reasonable doubt by circumstantial evidence. State v. Griffin, Hamilton App. No. C-980143, 1998 Ohio App. LEXIS 5905, citing State v. Thompkins
(1997), 78 Ohio St.3d 380, paragraph one of the syllabus; R.C.2923.11(B)(2). That evidence may consist of the testimony of lay witnesses who were in a position to observe the instrument and the circumstances of the crime. Griffin, citing State v.Murphy (1990), 49 Ohio St.3d 206, 551 N.E.2d 932, syllabus.
 {¶ 28} Furthermore, in Thompkins the Ohio Supreme Court rejected the view that the circumstantial proof of operability must consist of certain recognized indicia, such as bullets, the smell of gunpowder, bullet holes, or verbal threats by the user of the weapon that he or she would shoot the victim. TheThompkins court held that a "firearm is defined in R.C.2923.11(B)(1) as `any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. "Firearm" includes an unloaded firearm, and any firearm which is inoperable but which can readily be rendered operable.'"[6] Id., at 384. Thus, operability or potential operability may be proven if an individual "brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense * * *." Id.
 {¶ 29} In the case at bar, Johnson testified that before the robbery, while she was talking to defendant as he sat in the Cadillac, she saw a gun. Just as defendant told her he was going into the store to "check it out," he reached for a gun located at the side of his seat. Johnson knew it was an automatic.
 {¶ 30} Both Farraj and Jaffal testified that they saw defendant with a gun on the 11th. Both men said defendant used the gun to get them to empty their cash registers. Farraj identified State's Exhibit 5 as a photograph of defendant that was taken by the store's camera during the robbery. That photograph clearly depicts defendant holding a gun aimed at Jaffal.
 {¶ 31} From the evidence adduced in this case, we conclude that three eyewitnesses, in addition to the video, amply demonstrated that defendant used a firearm during the robbery. Accordingly, this assignment of error fails.
IV. THE VERDICTS FINDING THE APPELLANT GUILTY ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND ARE CONTRARY TO LAW.
 {¶ 32} In the first part of this assigned error, defendant makes the broad assertion that the manifest weight of the evidence in this case does not support his convictions. After citing generally to case law concerning the issue of manifest weight, defendant states that this case is filled with conflicting testimony. These facts reinforce the necessity for concluding * * * the jury clearly lost its way. Not only this, but nearly every witness testified to innocuous details, irrelevant matter or after the fact events.
Defendant's Brief on Appeal, at 16. Defendant, however, fails to support his various claims by providing specific references to the record.
 {¶ 33} "The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based * * *." App.R. 12(A)(2). This court can, therefore, overrule this assignment of error because of defendant's failure to comply with App.R. 12. Nevertheless, we find that the evidentiary record in this case supports the guilty verdicts.
 {¶ 34} "In considering a manifest weight claim, the court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. State v. Lindsey,87 Ohio St.3d 479, 483, 2000-Ohio-465, 721 N.E.2d 995." Short,
supra, at ¶ 18.
 {¶ 35} As we have already discussed in Assignment of Error III, there were three eyewitnesses when defendant robbed the mini-mart. The store camera captured defendant not only in the store behind the registers, but also showed him aiming a gun a Jaffal. Defendant's witness, Evans, did not provide defendant with an alibi.
 {¶ 36} Defendant further claims that Johnson's testimony is not believable because she said she spoke to defendant about his car during the day on the 10th rather than the early morning hours of the 11th. The discrepancy in Johnson's testimony about the time is not enough to overcome the other overwhelming evidence that defendant robbed the mini-mart. Farraj, Jaffal, and Plata actually witnessed the robbery and they were all consistent about when it occurred. Defendant's fourth assignment of error is overruled.
V. THE FAILURE OF THE COURT TO REQUIRE THE STATE TO QUALIFY DETECTIVE FREEHOFFER AS AN EXPERT AND TO ESTABLISH APPELLANT'S POSSESSION OF A WEAPON BEYOND A REASONABLE DOUBT ON A CHARGE OF AGGRAVATED ROBBERY WITH A THREE YEAR GUN SPECIFICATION WAS UNFAIRLY PREJUDICIAL AND VIOLATED DUE PROCESS.
 {¶ 37} Defendant argues that Detective Freehoffer was not properly qualified as an expert when he testified that the type of gun defendant used during the robbery was a .40 caliber semiautomatic. Defendant finds particular fault with the detective's testimony about the type of firearm defendant is seen holding in State's Exhibit 5.
 {¶ 38} Defendant did not object, however, to the detective's testimony at trial. Without an objection, therefore, this claimed error is reviewed under a plain error standard. State v.Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. Plain error will not be found unless it can be said that, but for the error, the outcome of the trial would clearly have been otherwise. Id.
 {¶ 39} Further, the decision to admit or exclude relevant evidence is within the sound discretion of the trial court.State v. Bey (1999), 85 Ohio St.3d 487, 490, 1999-Ohio-283,709 N.E.2d 484. The term "abuse of discretion" implies more than an error of law or judgment. Rather, the term suggests that the trial court acted in an "unreasonable, arbitrary, or unconscionable" manner. Beard v. Meridia Huron Hosp.,106 Ohio St.3d 237, 2005-Ohio-4787, ¶ 22, 834 N.E.2d 323, citingBlakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140, quoting State v. Adams (1980), 62 Ohio St.2d 151,157, 404 N.E.2d 144.
 {¶ 40} We reject defendant's claim that Detective Freehoffer was not qualified as an expert in handguns. Pursuant to Evid.R. 702, a person qualifies as an expert when all the following criteria are met:
(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
(C) The witness' testimony is based on reliable scientific, technical, or other specialized information.
 {¶ 41} In the case at bar, the question of identifying the type of firearm defendant used on August 11th is not a matter within the typical knowledge of a lay person.
 {¶ 42} Detective Freehoffer was asked about the type of gun defendant was holding in the store's video of the crime.
Q: When you viewed the video, did you have an opportunity to watch it closely?
A: Yes, I did.
Q: Did you notice a gun being brandished in the video?
A: Yes, I did.
Q: Do you know what type of gun that was brandished?
A: From the photos and from the video, it looks like maybe a .40 caliber semiautomatic black handgun.
Q: How do you know it's a .40 caliber semiautomatic?
A: I've seen a lot of smaller .40 calibers out in the district about that same size, same description.
Q: As a police officer, are you trained in guns?
A: Yes.
Q: What sort of training do you go through?
A: We go through handgun training every year, eight-hour classes.
Q: Does the police department make you familiar with the types of guns that are able to be purchased and used?
A: Yes, they do.
Q: And as a result of that training, you are able to identify this gun?
A: Yes.
Tr. 287-288.
 {¶ 43} From this testimony, we conclude that Detective Freehoffer was well qualified as a firearm expert by his specialized knowledge, experience, annual training, and education as a police officer/detective. Under Evid.R. 702, we conclude that Detective Freehoffer was properly qualified as an expert when he testified about the gun defendant used during the robbery.
 {¶ 44} Even if the detective failed to qualify as a expert, however, we would still reject defendant's argument because we find no plain error. Against the backdrop of Farraj and Jaffal's eyewitness testimony that defendant used a gun to rob them, we cannot say that, but for Detective Freehoffer's testimony, the outcome of the trial would have been different. The trial court, therefore, did not abuse its discretion in allowing the detective to testify about the gun. Defendant's fifth assignment of error is overruled.
VI. THE APPELLANT WAS DENIED DUE PROCESS WHEN THE AGGRAVATED ROBBERY CHARGES IN THIS CASE WERE RESOLVED AGAINST HIM ON THE BASIS OF DEFECTIVE JURY INSTRUCTIONS.
 {¶ 45} As in Assignment of Error II, defendant argues here that he was entitled to a jury instruction on alibi. Since we have already concluded that Evans did not provide defendant with an alibi, we further conclude, for purposes of this assignment, that defendant would not, therefore, be entitled to an alibi instruction. Defendant's Assignment of Error VI is, therefore, overruled.
VII. APPELLANT WAS DENIED THE RIGHT TO DUE PROCESS WHEN THE COURT IMPROPERLY PRECLUDED THE JURY FROM CONSIDERING RELEVANT EVIDENCE CONCERNING AT LEAST ONE OF THE VICTIMS' LACK OF CREDIBILITY AND INABILITY TO IDENTIFY THE APPELLANT AS THE ROBBER.
 {¶ 46} Defendant argues that he was prejudiced when the trial court ruled that the testimony he attempted to elicit from his brother, defense witness, Landon Nicholson, was inadmissible. According to defendant, because he was pro se, the trial court should have given him greater latitude during his direct examination of his brother.
 {¶ 47} As stated earlier, the decision to admit or exclude relevant evidence is within the sound discretion of the trial court. Bey, supra, at 490.
 {¶ 48} In the case at bar, defendant argues that Landon's testimony was important and should have been allowed because he heard out-of-court statements made by Farraj. According to defendant, before he was called to testify for the state, Farraj was sitting outside the courtroom. While he waited to be called, defendant claims that Landon heard Farraj make statements that he interpreted to mean that Farraj was not sure what defendant looked like.
 {¶ 49} When the trial court asked defendant what he intended to elicit from Landon, he responded as follows:
Actually, it's in the character of one of the witnesses' statements here about identifying me. Identification of myself with Mahmoud. On cross-examination when my attorney — my attorney got him to admit that he sat here behind me and doesn't know who I was, and then subsequently it was the prosecutor, and I have witnesses who went out there, not only explained who I was, described down to everything I had on to the guy, and he come back in and he even admitted as such, but it wasn't in detail, and I wanted to let the jurors know that this is what happened.
Tr. 336-337. The state countered defendant's claims by the following comments:
MS. BOLTON: Your Honor, the State of Ohio would object to the calling of this witness. First and foremost, he sat in the back of the courtroom during the pendency of this trial.
Secondly, I believe that Mr. Rudy, when he was counsel of record in this matter, was able to question Mr. Jaffal with regard to the identification of the defendant, and I believe in the course of testimony that Mr. Jaffal said that he did not have a problem in recognizing the defendant on a prior occasion or in court during the pendency of this trial. And as a result, the State of Ohio would ask that you exclude this witness.
Tr. 337. Even though the trial court initially sustained the state's objection, it nonetheless allowed defendant to call Landon.
 {¶ 50} Defendant's direct examination of Landon is as follows:
Q: Excuse me. About two weeks ago, the person who I'm accused — charged of this situation, this case with, did you happen to overhear a conversation between him and the prosecution and the officer here outside the door?
A: Yes. The older gentleman that's the victim in this case was out there —
MS. BOLTON: Objection.
THE COURT: Hearsay/Sustained.
Q: Can you just tell us what conversation you overheard.
MS. BOLTON: Objection.
THE COURT: You cannot testify as to the out-of-court statements of witnesses.
THE DEFENDANT: He cannot do what now?
THE COURT: That's called hearsay, Mr. Nicholson. He cannot testify as to the substance of out-of-court statements made by others.
THE DEFENDANT: I'll follow. Thank you.
THE COURT: You're welcome.
BY THE DEFENDANT:
Q: At the date in question and the time that I'm referring to, did you happen to notice the prosecutor and this particular witness in discussion?
MS. BOLTON: Objection.
THE COURT: You can answer that but you can't say what the substance of the discussion is.
A: Yes. Yes.
Q: All right. This is the witness — no further questions. Thank You.
Tr. 342-343.
 {¶ 51} From this record, the trial court properly sustained each of the state's objections. The out-of-court statements Landon was about to describe constitute inadmissible hearsay pursuant to Evid.R. 801(C).[7] The trial court, therefore, did not abuse its discretion when it excluded the testimony defendant was attempting to elicit from Landon. Defendant's seventh assignment of error is overruled.
VIII. THE TRIAL COURT ERRED WHEN IT SENTENCED APPELLANT TO CONSECUTIVE SENTENCES WITHOUT PLACING ITS REASONS FOR DOING SO ON THE RECORD.
IX. THE TRIAL COURT ERRED WHEN IT FAILED TO CONSIDER AND FIND THAT THE SENTENCES IMPOSED WERE NOT DISPROPORTIONATE TO THE SERIOUSNESS OF, AND TO ANY DANGER POSED BY, APPELLANT'S CONDUCT.
 {¶ 52} In assignments of error eight and nine, defendant argues the trial court erred when it sentenced him to consecutive sentences. Defendant specifically challenges the "disproportional" finding required by R.C. 2929.14(E)(4).
 {¶ 53} Recently, the Supreme Court of Ohio, in State v.Foster, ___ Ohio St.3d ___, 2006-Ohio-856, held that the statutes requiring findings for maximum and consecutive sentences are unconstitutional. As a result, sentencing courts are no longer required to provide findings and reasons for imposing these sentences. The failure to provide such findings in the case at bar, therefore, is no longer error.
 {¶ 54} As this court recently stated:
"[Cases] pending on direct review must be remanded to trial courts for new sentencing hearings not inconsistent with this opinion. * * *
Under R.C. 2929.19 as it stands without (B)(2), the defendants are entitled to a new sentencing hearing although the parties may stipulate to the sentencing court acting on the record before it. Courts shall consider those portions of the sentencing code that are unaffected by today's decision and impose any sentence within the appropriate felony range. If an offender is sentenced to multiple prison terms, the court is not barred from requiring those terms to be served consecutively. While the defendants may argue for reductions in their sentences, nothing prevents the state from seeking greater penalties. United States v.DiFrancesco (1980), 449 U.S. 117, 134-136, 101 S.Ct. 426, 66 L.Ed.2d 328."
State v. Dawson, Cuyahoga App. No. 86417, 2006-Ohio-1083, ¶ 35, citing Foster, ¶ 104, ¶ 105.
 {¶ 55} Consistent with Dawson and Foster, we vacate and remand this matter for a new sentencing hearing. On remand, however, we underscore the Ohio Supreme Court's further clarification of the impact of Foster on sentencing in Statev. Mathis, ___ Ohio St.3d ___, 2006-Ohio-855, ¶ 38:
Although after Foster, the trial court is no longer compelled to make findings and give reasons at the sentencing hearing since R.C. 2929.19(B)(2) has been excised, nevertheless, in exercising its discretion the court must carefully consider the statutes that apply to every felony case. Those include R.C. 2929.11, which specifies the purpose of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender. In addition, the sentencing court must be guided by statutes that are specific to the case itself.
 {¶ 56} Defendant's eighth and ninth assignments of error are sustained albeit for reasons that differ from those presented by defendant.
X. THE FAILURE OF THE DEFENSE TO PREPARE THE APPELLANT, SUBPOENA HIS WITNESSES AND FILE A NOTICE OF ALIBI VIOLATED DUE PROCESS, DEPRIVING APPELLANT OF EFFECTIVE ASSISTANCE OF COUNSEL.
 {¶ 57} Defendant argues that, before he replaced his trial counsel, that lawyer was ineffective because he never filed a notice of alibi. "In order to substantiate a claim of ineffective assistance of counsel, an appellant must demonstrate that 1) the performance of defense counsel was seriously flawed and deficient, and 2) the result of appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. Strickland v. Washington (1984),466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 * * *. In State v.Bradley, the Supreme Court of Ohio truncated this standard, holding that reviewing courts need not examine counsel's performance if appellant fails to prove the second prong of prejudicial effect. State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373." State v. Bewley, Cuyahoga App. No. 84312,2005-Ohio-4159, ¶ 10.
 {¶ 58} In the case at bar, the record shows that defendant's trial counsel did file a notice of alibi, albeit untimely. The state objected to the filing and that objection was overruled. As we have already noted, defendant presented Evans as his alibi witness. Having been allowed to offer Evans as his purported alibi witness, defendant cannot show prejudice.
 {¶ 59} Moreover, since we have already determined that Evans' testimony did not provide defendant with an alibi, defendant again did not suffer any prejudice even if the notice of alibi was filed late.
 {¶ 60} Defendant further argues that his trial counsel was ineffective because he did not object to Johnson's questionable testimony about what time of day she saw defendant on the 11th. We disagree.
 {¶ 61} Whether Johnson was testifying truthfully or whether she simply did not recall what time of day it was on the 11th, is not an issue involving the effectiveness of trial counsel. Johnson's testimony about when she saw defendant and the gun in his car is a matter of her credibility. And, it is well-settled that witness credibility is for the trier-of-fact to determine.State v. Young, Cuyahoga App. No. 82096, 2003-Ohio-4064, ¶ 28, citing State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of syllabus.
 {¶ 62} We further note that Johnson's testimony, credible or not, was actually cumulative of Farraj's and Jaffal's testimony about the robbery and their identification of defendant as the man who committed the crime.
 {¶ 63} Finally, defendant broadly asserts that his trial counsel's performance was deficient and fell below the appropriate standard of care. As before, because defendant fails to identify those places in the record which demonstrate his counsel's deficient performance, we need not address this issue any further. App.R. 12(A)(2). Defendant's tenth assignment of error is overruled.
 {¶ 64} Because we have sustained defendant's eighth and ninth assignments of error, we hereby remand this matter for the limited purpose of resentencing proceedings consistent with this opinion.
Judgment accordingly.
It is ordered that appellee and appellant share equally the costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J., and Gallagher, J., concur.
[1] Counts one and two of the indictment.
[2] Defendant was also convicted of a repeat violent offender specification, which was later dismissed by the state. Tr. 409. Further, counts one and two each carried a one-year and a three-year firearm specification, which were merged for sentencing purposes.
[3] Count three of the indictment.
[4] Pursuant to an initial plea bargain with the state, defendant entered a guilty plea to Count one of the indictment, aggravated robbery. Later in the proceedings, however, defendant withdrew his guilty plea. Defendant proceeded to a jury trial on Counts one and two of the indictment. Count three was tried to the court.
[5] At that time, section (B) of the statute included the language defendant refers to in this appeal. That language is as follows:
(B) No person who had been convicted of a felony of the first or second degree shall violate division (A) of this sectionwithin five years of the date of person's release from prison or from post-release control that is imposed for the commission of a felony of the first or second degree. (Emphasis added).
[6] R.C. 2923.11(B)(2) further provides that "when determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm."
[7] "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C).