JOURNAL ENTRY AND OPINION
{para; 1} Defendant-appellant, Sylvester Belcher, appeals the decision of the trial court. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the lower court.
 I. {para; 2} According to the facts, on September 3, 2006, Emma White drove to her cousin Lisa White's house to drop off a copy of her resume. She went to the window of her cousin's apartment and was greeted by her cousin. Lisa dropped her keys down from the second story porch to Emma so she could enter the apartment *Page 3 
building. As Emma opened the door to go into the building, appellant ran up behind her, put his arm around her throat, and forced her into the entrance of the apartment building. With his other hand, he held an object to her back and told her, "I have a gun, bitch. Let go of the purse."[1] She could feel something sticking into her back. Once inside, Emma was able to turn around to face appellant as she attempted to use a can of pepper spray.
{para; 3} The pepper spray was knocked out of her hand, and Emma's head was slammed into the wall several times. Emma testified that she stood face to face with appellant at a distance of five inches for approximately a minute and a half with a light overhead, thereby allowing her a clear view of his face and the clothes he was wearing. The victim described her attacker as a black male with a dark complexion, who was approximately 5 feet 11 inches and stocky. In addition, the victim stated that her attacker was wearing jeans, a black sweatshirt with a hood, white tennis shoes, sunglasses, and a baseball cap.
{para; 4} The attacker eventually ripped the purse from the victim's hands and ran out of the apartment building and into his car. Emma ran out behind the attacker and called 911. She informed the operator that she had just been robbed at gunpoint and gave the license plate number over the phone. The attacker viewed Emma calling the police in his rearview mirror and ran out of his vehicle to stop her. He reached into his pocket for the firearm when Lisa screamed out of the apartment *Page 4 
building for the attacker to leave her cousin alone. The attacker then re-entered his vehicle and drove away.
{para; 5} Appellant was indicted by the Cuyahoga County Grand Jury in Case No. CR-486904. Appellant was charged with one count of aggravated robbery in violation of R.C. 2911.01, a felony of the first degree; one count of robbery in violation of R.C. 2911.02, a felony of the second degree; two counts of aggravated burglary in violation of R.C. 2911.11, a felony of the first degree; and one count of kidnapping in violation of R.C. 2905.01, a felony of the first degree. The aggravated robbery, robbery, and aggravated burglary counts all contained one-and three-year firearm specifications.
{para; 6} On November 22, 2006, a motion to suppress was filed. On that same date a motion for suppression of evidence and request for an evidentiary hearing and memorandum in support was filed. On November 28, 2006, appellant filed his pro se dismissal of charge for delay of preliminary hearing. On December 7, 2006, prior to commencing trial, defense counsel withdrew the motion to suppress the oral state of appellant. The court denied appellant's request for dismissal of charge for delay of preliminary hearing. The court proceeded with a hearing on the motion to suppress evidence relative to the search warrant. The court overruled said motion at the conclusion of the hearing.
{para; 7} On December 7, 2006, the trial commenced and continued through December 8, 2006. On December 11, 2006, the jury returned a guilty verdict on all five counts of the indictment and the three-year firearm specifications. The jury *Page 5 
found the appellant not guilty of the one-year specifications, but guilty of the three-year specifications, with the one year being a lesser included offense of the three-year firearm specifications.
{para; 8} The court sent the jury back to deliberate further until it reached a consistent verdict relative to the firearm specifications. Subsequently, the state moved to have the court dismiss the one-year firearm specifications. The court granted the state's motion and returned the jury to deliberate solely on the three-year firearm specifications. Shortly thereafter, the jury returned a guilty verdict on all counts as well as the three-year firearm specifications. The court sentenced appellant to eight years on each count, to run concurrently to each other and consecutively to the three-year gun specifications for a sentence of eleven years. Appellant now appeals.
 II. {para; 9} First assignment of error: "Appellant was denied the effective assistance of counsel as guaranteed by the Sixth Amendment."
{para; 10} Second assignment of error: "The evidence was insufficient to support a three year firearm specification attendant to the first four counts of the indictment."
{para; 11} Third assignment of error: "The jury's guilty verdict relative to the three year firearm specification attendant to the first four counts of the indictment was against the manifest weight of the evidence."
{para; 12} Fourth assignment of error: "The trial court erred when it granted the State of Ohio's motion to dismiss the one year firearm specification insofar as it *Page 6 
deprived appellant the opportunity to have the jury consider the lesser included offense of the one year firearm specification."
 III. {para; 13} Appellant argues in his first assignment of error that he was denied effective assistance of counsel. Specifically, appellant claims that his counsel failed to subpoena necessary exchange and refund receipts from A.J. Wright general merchandise store. Appellant also argues that his counsel failed to object to the state's oral motion to dismiss the one-year gun specification charge and leave in the three-year gun specification charge after the jury conflicted during deliberations.
{para; 14} In order to successfully assert ineffective assistance of counsel under the Sixth Amendment, the dual prongs of the test set forth in Strickland v. Washington (1984), 466 U.S. 668, must be satisfied. A defendant must show not only that the attorney made errors so serious that he was not functioning as "counsel," as guaranteed by the Sixth Amendment, but also that the deficient performance was so serious as to deprive him of a fair and reliable trial. Id. at 687.
{para; 15} The Ohio Supreme Court set forth a similar two-part test:
 "First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness."
State v. Bradley (1989), 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373. *Page 7 
 {para; 16} Because there are countless ways to provide effective assistance in any given case, the scrutiny of counsel's performance must be highly deferential, and there will be a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, supra; accord State v. Bradley, supra. In sum, it must be proven that counsel's performance fell below an objective standard of reasonable representation, and that prejudice arose from his performance. Id.
{para; i7} In reviewing a claim of ineffective assistance of counsel, it must be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner. State v. Smith (1985),17 Ohio St.3d 98, 17 Ohio B. 219, 477 N.E.2d 1128; Vaughn v. Maxwell (1965),2 Ohio St.2d 299, 209 N.E.2d 164. "Judicial scrutiny of counsel's performance must be highly deferential * * *," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." Strickland, supra, at 689.
{para; i8} Contrary to appellant's assertions, there is nothing in the record to demonstrate that appellant's counsel did not attempt to get the alleged purse receipts for the appellant. Furthermore, a review of the record demonstrates that there is no evidence the receipts ever existed. Moreover, even if the alleged receipts had been produced and accepted into evidence, there is still substantial evidence tying appellant to the crime.
{para; 19} Appellant's voice and photograph were both identified by the victim, his license plate number was given to the 911 operator by the victim, the clothing worn *Page 8 
by the perpetrator was found in appellant's house, appellant reported his vehicle stolen five minutes after the incident occurred, appellant gave multiple versions of the events that occurred on that day, and there was no evidence that corroborated either of appellant's versions of what happened. Therefore, even if appellant's counsel had produced a receipt of the purse, it would not have changed the results of the trial.
{para; 20} In addition to the above, appellant argues that his representation was deficient because his attorney did not object to the dismissals of the one-year firearm specifications. Appellant's trial counsel allowed the state to delete the one-year firearm specifications and, in doing so, reduced the number of specifications that appellant could be convicted of. This is not defective. Moreover, appellant's trial counsel sent the jury back to deliberate on the three-year gun specifications. Therefore, it was possible that the jury could have returned with a not guilty verdict on the three-year specifications instead of the guilty verdict they had initially returned. Furthermore, the decision clearly did not alter the result of the trial because the jury came back with the same verdict as they had before the deletion was made.
{para; 21} We find nothing in the record to demonstrate ineffective assistance of counsel on the part of appellant's trial counsel. The conduct in this case did not constitute a substantial violation of any of defense counsel's essential duties to the client. Furthermore, we find that the record demonstrates that appellant was not prejudiced by counsel. *Page 9 
 {para; 22} Appellant's first assignment of error is overruled.
{para; 23} Because of the substantial interrelation between appellant's second and third assignments of error, we shall address them together. Appellant argues in his second and third assignments of error that the evidence is insufficient to support a three-year firearm specification and is against the manifest weight of the evidence.
{para; 24} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror and intrudes its judgment into proceedings which it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury which has "lost its way." State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52, 678 N.E.2d 541. As the Ohio Supreme Court declared:
 "Weight of the evidence concerns `the inclination of the greater amount of credible evidence offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'
 "* * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id. at 387. (Internal citations omitted.)
 {para; 25} However, this court should be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact, and a *Page 10 
reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the state has proven the offense beyond a reasonable doubt. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, at paragraphs one and two of the syllabus. The goal of the reviewing court is to determine whether the new trial is mandated. A reviewing court should only grant a new trial in the "exceptional case in which the evidence weighs heavily against a conviction." State v. Lindsey, 87 Ohio St.3d 479, 483, 2000-Ohio-465,721 N.E.2d 995. (Internal citation omitted.)
{para; 26} Pursuant to R.C. 2941.141, the one-year firearm specification provides the following:
 "(A) Imposition of a one-year mandatory prison term upon an offender under division (D)(1)(a) of section 2929.14 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense. The specification shall be stated at the end of the body of the indictment, count, or information, and shall be in substantially the following form:
 "SPECIFICATION (or, SPECIFICATION TO THE FIRST COUNT). The Grand Jurors (or insert the person's or the prosecuting attorney's name when appropriate) further find and specify that (set forth that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense.)
 "(B) Imposition of a one-year mandatory prison term upon an offender under division (D)(1)(a) of section 2929.14 of the Revised Code is precluded if a court imposes a three-year or six-year mandatory prison term on the offender under that division relative to the same felony."
(Emphasis added.) *Page 11 
 {para; 27} Pursuant to R.C. 2941.145, the three-year firearm specification provides the following:
 "The offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."
 {para; 28} R.C. 2923.11 defines a firearm as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of any explosive or combustible propellant." This definition includes an "unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." R.C. 2923.11(B)(1).
{para; 29} This appellate court previously addressed this issue inState v. Nicholson, Cuyahoga App. No. 85977, 2006-Ohio-1569, and found the following:
 "According to the Ohio Supreme Court, a firearm specification can be proven beyond a reasonable doubt by circumstantial evidence. That evidence may consist of the testimony of lay witnesses who were in a position to observe the instrument and the circumstances of the crime.
 "Furthermore, in [State v. Thompkins (1997), 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541] the Ohio Supreme Court rejected the view that the circumstantial proof of operability must consist of certain recognized indicia, such as bullets, the smell of gunpowder, bullet holes, or verbal threats by the user of the weapon that he or she would shoot the victim."
(Citations omitted.)
{para; 30} In the instant case, the victim, Emma White, testified that appellant put his arm around her throat, held a gun to her back and told her, "I have a gun, bitch. *Page 12 
Let go of the purse." Emma also testified that she could feel the gun sticking into her back, and that appellant slammed her head into the wall several times during the attack. Emma also testified that she could see the gun weighing down the front of appellant's hooded jersey.[2]
In addition, the victim told the 911 operator that she had just been robbed at gunpoint.[3] A number of cases on this issue support a conviction where the appellant states that he has a gun and indicates that he will use it, even if no one sees the gun and the gun is never produced at trial and, therefore, cannot be tested to determine whether it is operable. State v. Jeffers (2001), 143 Ohio App.3d 91; State v.Haskins, Erie App. No. E-01-016, 2003-Ohio-70; State v. Watkins, Cuyahoga App. No. 84288, 2004-Ohio-6908; State v. Hampton, Hamilton App. No. C-010159, 2002-Ohio-1907; State v. Knight, Greene App. No. 2003 CA14, 2004-Ohio-1941. The defendant in each of these cases was convicted of a firearm specification, although the gun was not seen during the event.
{para; 31} As previously stated, Emma testified appellant told her he had a gun; she could feel the gun sticking in her back; she could see the gun weighing down the front of appellant's hooded jersey;[4] and she told the 911 operator that she had just been robbed at gunpoint. *Page 13 
 {para; 32} Accordingly, we conclude that the evidence is sufficient, supports the three-year firearm specifications, and is not against the manifest weight of the evidence.
{para; 33} Appellant's second and third assignments of error are overruled.
{para; 34} Appellant argues in his fourth assignment of error that the trial court erred when it granted the state's motion to dismiss the one-year firearm specifications.
{para; 35} A review of the transcript demonstrates that appellant failed to object to the dismissal of the one-year firearm specifications at trial.
 "THE COURT: * * * But the state's removing the one-year spec at the risk that the jury could go back and change their findings on the three year spec to did not or they could just return a verdict as they had earlier of did. Deleting the one-year spec removes the inconsistency. I just want to make sure I understand your position. You are not objecting to the state's dismissal [of] the one-year spec?"
 MR. MCDONNELL: Correct."[5] (Emphasis added.)
 {para; 36} Since appellant failed to object to the dismissal of the one-year firearm specification at trial, we must review this assignment of error under the plain error standard. State v. Long (1978),53 Ohio St.2d 91, 372 N.E.2d 804. Plain error exists when but for the error the outcome of the trial would have been different. State v. Moreland
(1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894. *Page 14 
 {para; 37} Appellant argues that the one-year firearm specification was a lesser included offense of the three-year specification and, therefore, he was entitled to an instruction on the lesser included offense.
{para; 38} In State v. Turner (June 11, 1987), Cuyahoga App. No. 52145, this court held that a penalty enhancement specification is not an offense. See, also, State v. Hernandez (Feb. 24, 2000), Cuyahoga App. No. 74757.
{para; 39} "[A] specification is, by its very nature, ancillary to, and completely dependent upon, the existence of the underlying criminal charge or charges to which the specification is attached." State v.Nagel (1999), 84 Ohio St.3d 280, 286. A specification is not an offense standing alone and ordinarily serves to increase the degree of the crime committed and the attendant penalty. State v. Hernandez (Feb. 24, 2000), Cuyahoga App. No. 74757.
{para; 40} Crim.R.7(D), which pertains to the amendment of an indictment, states in pertinent part:
 "The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged."
 {para; 41} In the case at bar, appellant argues that he was entitled to have the jury consider the one-year firearm specification because it is a lesser included offense of the three-year firearm specification. However, this assignment of error is without merit because, as previously stated, a firearm specification is not an offense. In *Page 15 
addition, this court was entitled to amend the indictments according to Crim.R. 7(D).
{para; 42} Appellant failed to show that the outcome of the trial would have been different but for the dismissal. The jury returned the same verdict on the remaining counts, both prior to and following the amendment.
{para; 43} Accordingly, we overrule appellant's fourth assignment of error.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, P.J., and PATRICIA ANN BLACKMON, J., CONCUR
[1] Tr. 35.
[2] Tr. 96.
[3] Tr. 98-101.
[4] Tr. 96.
[5] Tr. 296-297. *Page 1