JOURNAL ENTRY AND OPINION
{¶ 1} Damas Armstrong ("Damas") and Leonardo Armstrong ("Leonardo") appeal their convictions received in the Cuyahoga County Court of Common Pleas. Damas and Leonardo argue that the State of Ohio ("State") supplied insufficient evidence to support their convictions, their convictions are against the manifest weight of the evidence, the trial court relied on inadmissible evidence, and the prosecutor committed reversible misconduct. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} This case arose from the events that occurred in the early morning hours of January 16, 2005. On that night, Andre Rodgers ("Andre") spoke with his brother Aron Rodgers ("Aron") on the telephone and agreed to meet him at The Benjamins bar located at East 152 Street and St. Clair Avenue. Andre and a friend arrived at the bar just before closing time and met with Aron.
 {¶ 3} While at the bar, Aron testified that he noticed Leonardo and an individual later identified to be Leonardo's brother, Damas, were also at the bar. Aron testified that in June 2004, he and Leonardo got into a physical altercation while at The Benjamins. Both Aron and Leonardo gave differing versions of the events that occurred in June 2004, but both admitted to the physical altercation.
 {¶ 4} Aron stated that in the early morning hours of January 16, he observed Leonardo and Damas leaving The Benjamins so he inexplicably decided to leave as well. Aron testified that when he exited the bar, he had to walk past Leonardo and Damas to get to his car. As he walked towards the Armstrongs, Aron stated that Leonardo made a disparaging comment to him and he responded. Aron stated that an argument followed.
 {¶ 5} Andre testified that when he learned that his brother was in an argument in the parking lot, he went outside to investigate. Andre stated that when he approached Aron, Damas pulled out a gun and stated that no one was going to jump his brother. Andre stated that he did not know Leonardo and Damas at the time but identified them in court as the individuals arguing with his brother. Andre then stated that he attempted to pull his brother away to get him back inside the bar.
 {¶ 6} Aron testified that while his brother was trying to get him to safety, several people exited their vehicles and began encircling him. Aron stated that he took off his coat and shirt to protect himself from the approaching individuals. They began to hit him, and he went down to the ground. As he was on the ground, the men in the parking lot began to stomp him. Aron stated that as he was being beaten, he saw Leonardo hit his brother in the head. He saw Andre hit the ground, and Damas beat him with his handgun. Aron stated that he also saw Leonardo hit Andre with the same weapon.
 {¶ 7} Aron testified that after the beating ended, he went to Andre to get him help. Aron testified that he drove Andre to Huron Road Hospital for treatment. Andre was later transferred to University Hospital for insurance reasons. While at the hospital, Andre received treatment for a broken nose and a broken eye socket. Andre underwent surgery to repair the damage to his eye socket and remained in the hospital for several days.
 {¶ 8} Detectives interviewed both Aron and Andre and learned from Aron that a man named Leo and his brother were the individuals who assaulted Andre. Officers identified Leonardo and Damas Armstrong and tracked down their bureau of motor vehicle photographs for a photo lineup. Aron identified both Leonardo and Damas from the photo lineup. Andre identified Leonardo but did not identify Damas from the photo lineup. However, Andre identified both Leonardo and Damas in court.
 {¶ 9} Leonardo and Damas gave a different version of the events of January 16, 2005. Both appellants stated that they arrived at The Benjamins a little before closing time. Leonardo stated that he and his brother ordered drinks and sat down at the bar. While they were sitting, Leonardo noticed that Aron was also at The Benjamins. Leonardo testified that he felt uncomfortable so he and his brother left. As they were walking towards their car, they heard someone calling "Leon, Leo." Leonardo turned around and saw Aron coming towards them. Leonardo stated that he and Aron were talking cordially in the beginning and he thought they would be able to work out their differences. However, Aron kept looking towards the bar and once Andre exited, Aron turned and became hostile. Leonardo and Damas stated that Aron took off his jacket and shirt and began challenging Leonardo to a fight. Leonardo stated that he told Aron that he did not want to fight. Both appellants stated that people began exiting The Benjamins and a crowd began to form around Aron. Leonardo stated that after a while, Aron began challenging everyone around him to a fight. The appellants testified that someone in the crowd swung at Aron and then everyone jumped in. Leonardo and Damas reported that the crowd began beating both Aron and Andre. The Appellants testified that when the fight began, they both walked to their cars and drove home.
 {¶ 10} Also present at The Benjamins on January 16th were Leland Johnson ("Johnson"), a patron of The Benjamins, and Yule Brewer ("Brewer"), the manager of The Benjamins. Both Johnson and Brewer stated that Aron instigated the fight and that neither Leonardo nor Damas ever touched Aron or Andre.
 {¶ 11} On March 23, 2005, the Cuyahoga County Grand Jury returned a five-count indictment against Damas and Leonardo. The indictment charged the defendants with two counts of aggravated robbery with one- and three-year firearm specifications, and two counts of felonious assault with one- and three-year firearm specifications. The indictment also charged Leonardo with one count of having a weapon while under disability. Both defendants pleaded not guilty, executed written waivers of their rights to a jury trial, and elected to try their case to the bench.
 {¶ 12} During the trial, Leonardo and Damas testified as to their character. Both men have college degrees and were working steadily before, during, and after the incident. In response to Leonardo's and Damas' character evidence, the State put forth evidence that appellants were members of the Valley Low gang. East Cleveland Police Officer Randy Hicks testified that the Valley Low is a gang that operates near The Benjamins and that the bar itself is a Valley Low hangout. Officer Hicks opined that Damas was associated with the gang while Leonardo was an active member. Officer Hicks was unable to support his opinion with any evidence. Leonardo and Damas denied any association with the gang.
 {¶ 13} On September 27, 2005, the trial court found Leonardo not guilty of the two counts of aggravated robbery and the attendant firearm specifications. The court found him guilty of the two charges of felonious assault with both the one- and three-year firearm specifications as well as the charge of having a weapon while under disability. The trial court premised its finding of guilt upon a complicity theory.
 {¶ 14} On that same date, the trial court found Damas not guilty of the two counts of aggravated robbery and the attendant firearm specifications but found him guilty of the two counts of felonious assault with both one- and three-year firearm specifications. The trial court determined that Damas was the principal offender.
 {¶ 15} On November 21, 2005, the trial court merged each of the defendants' firearm specifications and ordered both defendants to serve three years of incarceration to run consecutive with five years of community controlled sanctions.[1] Both Leonardo and Damas appealed their convictions. This court sua sponte ordered the cases consolidated.
 {¶ 16} In their first assignment of error, Leonardo and Damas argue that the State failed to present sufficient evidence that they committed the crimes of felonious assault with firearm specifications. In their second assignment of error, Leonardo and Damas argue that their convictions are against the manifest weight of the evidence. Although these arguments involve different standards of review, we will consider them together because we find the evidence in the record applies equally to both.
 {¶ 17} The standard of review with regard to the sufficiency of the evidence is set forth in State v. Bridgeman (1978), 55 Ohio St.2d 261, as follows:
"Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."
 {¶ 18} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, in which the Ohio Supreme Court held:
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Citation omitted.)
 {¶ 19} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror, and intrudes its judgment into proceedings which it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury which has "lost its way." State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. As the Ohio Supreme Court declared:
"Weight of the evidence concerns `the inclination of the greater amount of credible evidence offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'
* * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id. at 387. (Internal Citations Omitted.)
 {¶ 20} However, this court should be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact, and a reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the State has proven the offense beyond a reasonable doubt. State v. DeHass (1967), 10 Ohio St.2d 230, at paragraphs one and two of the syllabus. The goal of the reviewing court is to determine whether the new trial is mandated. A reviewing court should only grant a new trial in the "exceptional case in which the evidence weighs heavily against a conviction." State v. Lindsey, 87 Ohio St.3d 479,483, 2000-Ohio-465. (Internal citation omitted.)
 {¶ 21} The trial court found both Leonardo and Damas guilty of two counts of felonious assault, which pursuant to R.C.2903.11 provides as follows:
"No person shall cause serious physical harm to another."
 {¶ 22} And
"No person shall cause serious physical harm by means of a deadly weapon or dangerous ordnance."
 {¶ 23} The trial court also found Leonardo and Damas guilty of one- and three-year firearm specifications, which pursuant to R.C. 2941.141 and R.C. 2941.145 provides as follows:
"[T]hat the offender had a firearm on or about the offender's person or under the offender's control while committing the offense * * * and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."
 {¶ 24} In support of its case, the State of Ohio presented the following evidence: Aron's and Andre's testimony that in the early morning hours of January 16, Aron got into an argument with Leonardo while Andre and Damas were present; during the argument, Damas pulled out a gun and stated that no one was going to jump his brother; Aron observed Leonardo hit Andre in the back of the head; Aron observed Damas strike Andre with a handgun while Andre was on the ground; and Aron also saw Leonardo hit Andre with the same handgun that was used by Damas.
 {¶ 25} In response, Leonardo and Damas put forth the following evidence: that they are both successful members of society; both Leonardo and Damas were patted down when they entered The Benjamins bar; that Leonardo and Aron got into a verbal argument outside in the parking lot; Aron challenged Leonardo to a fight; Leonardo did not want to fight Aron; bar patrons exited the establishment and were crowding around Aron in the parking lot; someone hit Aron and then the crowd began to beat Aron and Andre; both Leonardo and Damas got into their cars and drove home; and, that neither Leonardo nor Damas had weapons or hit Andre.
 {¶ 26} Additionally, Leonardo and Damas argue that the State failed to present sufficient evidence to support the identification of both appellants, and that the firearm allegedly used in the assault was operable. With regards to the identification of Leonardo and Damas by both Aron and Andre, we find that the State of Ohio presented sufficient evidence to allow the case to be heard to the trier of fact. Detective George Peters testified that Aron identified both Leonardo and Damas from a photo lineup and Andre identified Leonardo from the photo lineup. While Andre did not identify Damas from the photo lineup, he identified Leonardo and Damas in court as the individuals he saw arguing with Aron and specifically identified Damas as the man who pulled out the gun in the parking lot. Additionally, Aron identified Leonardo and Damas in court as the individuals he observed striking Andre with a handgun. While Leonardo and Damas claim that both Aron's and Andre's statements contain inconsistencies, we are viewing the evidence in the light most favorable to the prosecution. Moreover, the inconsistencies were explained by Aron and Andre that they were a result of the head trauma they suffered on the night of the assault. As such, we find that there was sufficient evidence to submit this case to the trier of fact.
 {¶ 27} As to the operability of the firearm, we also find that the State presented sufficient evidence to submit the case to the trier of fact. R.C. 2923.11 defines a firearm as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of any explosive or combustible propellant." This definition includes an "unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." R.C. 2923.11(B)(1).
 {¶ 28} This appellate court recently addressed this identical issue in State v. Nicholson, Cuyahoga App. No. 85977,2006-Ohio-1569, and found the following:
"According to the Ohio Supreme Court, a firearm specification can be proven beyond a reasonable doubt by circumstantial evidence. That evidence may consist of the testimony of lay witnesses who were in a position to observe the instrument and the circumstances of the crime. (Citations omitted).
"Furthermore, in [State v. Thompkins (1997),78 Ohio St. 3d 380, 1997-Ohio-52] the Ohio Supreme Court rejected the view that the circumstantial proof of operability must consist of certain recognized indicia, such as bullets, the smell of gunpowder, bullet holes, or verbal threats by the user of the weapon that he or she would shoot the victim. The Thompkins court held that a `firearm is defined in R.C. 2923.11(B)(1) as `any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant.' "`Firearm' includes an unloaded firearm, and any firearm which is inoperable but which can readily be rendered operable.'" Thus, operability or potential operability may be proven if an individual `brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense.'"
 {¶ 29} In the instant case, Andre testified that he observed Damas pull out a handgun and state that no one was going to jump his brother. Additionally, Aron testified that both Damas and Leonardo hit Andre with the handgun while Andre was lying on the ground.
 {¶ 30} Viewing this evidence in the light most favorable to the prosecution, we conclude that a reasonable trier of fact would be able to conclude that Leonardo and Damas used a firearm during the attack.
 {¶ 31} According, we find that a rational trier of fact could have found all the elements of felonious assault with one- and three-year firearm specifications in this case. Therefore, the State presented sufficient evidence to support Leonardo's and Damas' convictions.
 {¶ 32} We further find that the trier of fact did not lose its way in convicting Leonardo and Damas of two counts of felonious assault with one- and three-year firearm specifications. Though appellants argue that their version of the events should have been relied upon by the trial court, the trier of fact is in the best position to weigh the evidence and the credibility of witnesses. As the reviewing court, we find that the trier of fact could reasonably conclude from the substantial evidence presented by the State, that the State has proven the offenses beyond a reasonable doubt. Accordingly, we cannot state that the trier of fact lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.
 {¶ 33} For the abovementioned reasons, we overrule Leonardo's and Damas' first and second assignments of error.
 {¶ 34} In their third assignment of error, Leonardo and Damas argue that the "trial court's verdict was based upon two improper bases: that the defense did not identify the real culprits, and that the defendants were in proximity to the victim." In putting forth this argument, Leonardo and Damas failed to cite to any authority for this claim. An appellate court may disregard an assignment of error pursuant to App.R. 12(A)(2) if an appellant fails to cite to any legal authority in support of an argument as required by App.R. 16(A)(7). State v. Martin (July 12, 1999), Warren App. No. CA99-01-003, 1999 Ohio App. LEXIS 3266, citingMeerhoff v. Huntington Mortgage Co. (1995),103 Ohio App.3d 164, 169. "If an argument exists that can support this assignment of error, it is not this court's duty to root it out." Cardonev. Cardone (May 6, 1998), Summit App. Nos. 18349 and 18673, 1998 Ohio App. LEXIS 2028.
 {¶ 35} Leonardo and Damas failed to cite to any legal authority in support of their argument, a failure that allows this court to disregard this assigned error. App.R. 12(A)(2); App.R. 16(A)(7). Accordingly, we decline to review this assignment of error.
 {¶ 36} In their fourth assignment of error, Leonardo and Damas argue that "the trial court erred by permitting irrelevant, inadmissible, and prejudicial testimony regarding alleged gang activity." This assignment of error lacks merit.
 {¶ 37} Though the trial court did allow evidence of alleged gang activity during the trial, we apply the usual presumption that "in a bench trial in a criminal case, the court considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary."State v. Baston, 85 Ohio St.3d 418, 1999-Ohio-280. It is clear in this case that the trial court did not consider the gang evidence when it made its ruling. When admitting testimony concerning gang activity, the trial court stated the following:
"I want to make this very, very clear for the record, that the Court, as the fact-finder, is using this evidence only for the specific purpose of the credibility of the witnesses. This does not go to the ultimate issue of fact, and the Court is well-aware of that, and I think that as the fact-finder the Court can separate the wheat from the shaft [chaff] here * * *."
 {¶ 38} Additionally, at sentencing the trial court stated
"I want to make it real clear for the record as far as any type of gang related activity is concerned, this Court did not take that evidence into consideration, any great consideration, in rendering its verdict."
 {¶ 39} It is clear that the trial court did not consider the gang evidence in any inappropriate manner. Therefore, as there is no evidence that the trial court did not consider only relevant, material and competent evidence in arriving at its judgment, we overrule Leonardo's and Damas' fourth assignment of error.
 {¶ 40} In their fifth assignment of error, Leonardo and Damas argue that the prosecutor committed misconduct by misstating key evidence in closing argument. Specifically, appellants argue that the prosecutor committed misconduct when he stated that both Andre and Aron Rodgers testified that the gun used in the attack was an automatic. The record indicates that the prosecutor stated, while summarizing Andre's and Aron's testimony, that appellants were "using a pistol, an automatic that was identified by both State's witnesses." Leonardo and Damas claim that Andre described the weapon as a big, silver semi-automatic, while Aron described the weapon as a brown handled revolver. The record supports Leonardo's and Damas' claim.
 {¶ 41} Prosecutorial misconduct will only be grounds for error if the misconduct deprived the defendant of a fair trial.State v. Harriel, Hamilton App. No. C-040771, 2006-Ohio-2616. The remarks at issue must have been improper and must have prejudicially affected substantial rights of the accused. Statev. Smith (1998), 130 Ohio App.3d 360. When reviewing a claim of prosecutorial misconduct, this appellate court must remember that "the prosecution is normally entitled to a certain degree of latitude in its closing remarks." Harriel, supra. We must not review the prosecutor's statements in isolation, but rather in light of the entire closing argument. Id.
 {¶ 42} Because Leonardo and Damas did not object to this statement during trial, we review for plain error. State v.Kelly, Hamilton App. No. C-010639, 2002-Ohio-6246. Additionally, we apply the presumption that during a bench trial, the trial court considers "only relevant, material, and competent evidence in arriving at its judgment unless it appears to the contrary."Harriel, supra.
 {¶ 43} In the present case, the prosecutor incorrectly stated that both State's witnesses identified the weapon as an automatic. However, viewing this statement in light of the entire closing argument, we cannot conclude that it rises to the level of plain error. Additionally, this misstatement was not prejudicial. The trial court heard Andre identify the weapon as an automatic, while Aron identified it as a revolver and considered the evidence in an appropriate manner. One misstatement by the prosecution, which was contradicted by its own witnesses, did not deprive Leonardo and Damas of a fair trial.
 {¶ 44} Accordingly, appellants' fifth and final assignment of error is overruled.
Judgment of convictions affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendants' conviction having been affirmed, any bail pending appeal is terminated.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., and Blackmon, J., concur.
 APPENDIX Assignments of Error: "I. The evidence was insufficient to support a finding ofguilt as to felonious assault or the firearm specifications.
 II. The verdicts were against the manifest weight of theevidence.
 III. The trial court's verdict was based upon two improperbases: that the defense did not identify the real culprits, andthat the defendants were in proximity to the victim.
 IV. The trial court erred by permitting irrelevant andprejudicial testimony regarding alleged gang activity.
 V. The prosecutor committed prosecutorial misconduct inmisstating key evidence in closing argument."
[1] Leonardo does not appeal his conviction for Having a Weapon While Under Disability.