JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Eric Walker ("appellant"), appeals from his convictions and sentence for various counts of rape, attempted rape, kidnapping and gross sexual imposition. For the reasons set forth below, we affirm appellant's convictions, but vacate and remand his sentence for proceedings consistent with this opinion.
 {¶ 2} On August 31, 2004, the Cuyahoga County Grand Jury indicted appellant on 31 counts: counts 1 and 2 alleged rape of a child under the age of 13 against E.H. from 11/1/02 to 1/20/03, in violation of R.C. 2907.02, with firearm specifications; counts 3 and 4 alleged kidnapping against E.H. from 11/1/02 to 1/20/03, in violation of R.C. 2905.01, with firearm specifications; counts 5, 6, and 7 alleged rape against E.H. from 2/1/03 to 10/30/03, in violation of R.C. 2907.02, with firearm specifications; counts 8, 9, and 10 alleged gross sexual imposition against E.H. from 2/1/03 to 10/30/03, in violation of R.C. 2907.05; counts 11, 12, 13, and 14 alleged kidnapping against E.H. from 2/1/03 to 10/30/03, in violation of R.C. 2905.01, with firearm specifications; counts 15 and 16 alleged rape against E.H. for 7/11/04, in violation of R.C. 2907.02, with firearm specifications; count 17 alleged gross sexual imposition against E.H. for 7/11/04, in violation of R.C. 2907.05; count 18 alleged kidnapping against E.H. for 7/11/04, in violation of 2905.01, with a firearm specification; count 19 alleged attempted rape against T.H. on 7/10/04, in violation of R.C. 2923.02/2907.02; counts 20, 21, and 22 alleged gross sexual imposition against T.H. on 7/10/04, in violation of R.C. 2907.05; count 23 alleged rape against T.H. on 7/10/04, in violation of R.C. 2907.02; counts 24 and 25 alleged kidnapping against T.H. on 7/10/04, in violation of R.C. 2905.01; count 27 alleged gross sexual imposition against T.H. on 7/11/04, in violation of R.C. 2907.05; counts 26 and 29 alleged rape against T.H. on 7/11/04, in violation of R.C. 2907.02, with firearm specifications; counts 28 and 30 alleged kidnapping against T.H. on 7/11/04, in violation of R.C. 2905.01, with firearm specifications; and count 31 alleged carrying a weapon under a disability from 11/1/02 to 7/29/04, in violation of R.C. 2923.13. Counts 1-7, 11-16, 1-19, 23-26, and 28-30 were indicted with repeat violent offender specifications and notice of prior conviction specifications. The rape and kidnapping counts all included sexually violent predator specifications.
 {¶ 3} Counts 1-30 proceeded to trial by jury on June 13, 2005. Appellant waived a jury and tried count 31 to the bench. At trial, the evidence established the following facts.
 {¶ 4} E.H. testified that, in November of 2002, about two months before her 13th birthday, appellant, her biological father, began forcing sexual relations upon her. E.H. explained that in November she spent the weekend at appellant's apartment. She described the apartment as small, with one room divided by a dresser to create a bedroom and a living area. The apartment also had a small kitchen and bathroom. Because there was only one bed in the apartment, E.H. and appellant slept in the same bed during her visit.
 {¶ 5} While E.H. was asleep, appellant touched her breasts. Frightened, she said nothing. Appellant then digitally penetrated his daughter. E.H., in tears, asked her father to stop. He denied her request and instead, proceeded to have vaginal intercourse with her. When he finished, he apologized, pulled a gun from a closet next to the bed, pointed it to E.H.'s head, and threatened her that if she told anyone, he would kill her.
 {¶ 6} E.H. returned to her mother's house after that weekend, but never told her mother of the incident because she feared for her life.
 {¶ 7} Following her 13th birthday, from November of 2002 until July of 2004, E.H. testified that her father sexually assaulted her four or five more times during weekend visits with him. While he would not sexually assault her every weekend she stayed with him, he would punch her in her face, side or stomach nearly every weekend visit. She explained that she would return to her father's apartment despite the first incident of sexual conduct because she believed him when he told her that he would never do it again and it was her father and she loved him.
 {¶ 8} During her testimony, E.H. recalled the second time appellant raped her. She testified that appellant had sexual intercourse with her and did not threaten her with any weapon after the incident. He did, however, strike her in the face with his fist. He also told her again that he would kill her if she told anyone.
 {¶ 9} The third instance of alleged sexual conduct occurred during the weekend of July 9, 2004. E.H and T.H.'s mother went out of town for the weekend. Therefore, E.H. asked appellant if her and her sister, T.H., not appellant's biological child, could stay with him at his apartment for the weekend. E.H. asked T.H. to accompany her to her father's apartment because she believed that appellant would not harm her if T.H. was present. Appellant agreed despite the fact that he had a small cramped apartment with one bed. Additionally, at that time, appellant had two women staying with him, LaShawn Wallace and Latischa DeShawn Padgett, in addition to Ms. Padgett's young daughter, Rickeea.
 {¶ 10} With the apartment being so cramped, E.H. and T.H. slept in the same bed with appellant. Ms. Wallace, Ms. Padgett and Rickeea slept on a couch and pillows on the floor, which were located a short distance from the bed where appellant, E.H. and T.H. slept.
 {¶ 11} T.H., 14 years old, testified that appellant awoke her around 3:00 a.m. that Friday night. He had his arm around her head and his hand on his penis. He pushed T.H.'s head towards his penis attempting to make her have oral sex with him. T.H., scared, told him to stop. He complied with T.H's request.
 {¶ 12} On Saturday morning, around 11:00 a.m., while E.H. was still sleeping, appellant attempted to engage in sexual conduct with T.H. again. He felt her breasts with his hands and digitally penetrated her. She told him to stop and kicked her sister. E.H. awoke and appellant stopped touching T.H.
 {¶ 13} Saturday night everyone slept in the same places as the previous night. T.H. awoke again with appellant touching her on top of her clothes. She told appellant to stop, exited the bed, and sat in a chair. Appellant then awoke E.H. and made her sleep next to him to let T.H. sleep at the edge of the bed away from him. Appellant and T.H. then went to sleep.
 {¶ 14} On Sunday, T.H. awoke and telephoned her mother and requested that her mother pick the girls up from appellant's apartment. That same morning, appellant told Ms. Wallace and Ms. Padgett to leave. An argument ensued between the women and appellant. Eventually, the two woman and Rickeea left the apartment.
 {¶ 15} After leaving appellant's apartment, Ms. Wallace telephoned the C.M.H.A. Police Department to report that appellant had raped one of the two girls. Ms. Padgett testified that the previous night, Rickeea told her that she saw appellant with either T.H. or E.H. Rickeea testified that she awoke and saw appellant on top of one of the girls, moving up and down. Shortly after telephoning them, the C.M.H.A. police arrived and interviewed the women before going to appellant's apartment to investigate.
 {¶ 16} After Ms. Wallace, Ms. Padgett Rickeea left appellant's apartment, T.H. took a shower. E.H. testified that while T.H. was showering, appellant attempted to engage in sexual conduct with her again. She denied him and ran around the bed. As a result, appellant struck her repeatedly. He then retrieved a knife from the closet next to the bed. With the knife in hand, he ordered E.H. to stay on the bed. He also retrieved T.H. from the shower.
 {¶ 17} Appellant then engaged in sexual conduct with both girls. He pointed the knife at T.H.'s stomach. He then performed oral sex on T.H. while he digitally penetrated E.H. During this time, the knife was located beside him. Appellant also engaged in sexual intercourse with E.H. When appellant was finished, E.H. took a shower.
 {¶ 18} While E.H. was in the shower, appellant retrieved a gun and put it to T.H.'s mouth. He threatened that if she told anyone what had happened, he would kill her.
 {¶ 19} When E.H. returned from the shower, appellant was still pointing a gun at T.H. He told her to go into the bathroom and E.H. to sit next to him. He also told E.H. that if she told anyone, he would kill her.
 {¶ 20} Shortly thereafter, while the two girls and appellant were repairing the bed that had broken during the incident, two C.M.H.A. police officers, Officer Ronald Hopkins and Officer Flippen, knocked on the door. They entered appellant's apartment and told him that someone had called informing the police that two girls were being raped in the apartment. Appellant denied any wrongdoing. While appellant was present, the police then asked the girls if anyone was getting raped. The girls told the police they were not, fearing that appellant would harm them if they said otherwise. The police then left.
 {¶ 21} Thereafter, the girls' mother arrived and they returned home.
 {¶ 22} Both E.H. and T.H. did not inform their mother of the occurrences of that weekend until Friday, July 16, 2004. On that day, T.H. approached her mother in tears and informed her that appellant forced sexual conduct upon her and E.H.E.H. confirmed T.H.'s accusations. The mother telephoned appellant and told him she was reporting him to the police.
 {¶ 23} As promised, the mother contacted the Cleveland Police Department. As a result, Detective Alan Strickler and Lieutenant Michael Ballmiller from the Cleveland Police Department, along with Detective Thomas Burdyshaw and Lieutenant Ronald Morenz from the C.M.H.A. Police Department, obtained a warrant to search appellant's premises. During that search, the detectives discovered a fully loaded revolver, as well as a knife in a closet next to the bed. Each of the weapons matched the descriptions given by E.H. and T.H. In addition, the police discovered bullets loosely in the bottom of the closet and a knit cap carrying additional ammunition.
 {¶ 24} The mother also took the girls to the MetroHealth Alpha Clinic on September 29, 2004. There, Dr. David Soloman Bar-Shain ("Dr. Bar-Shain") interviewed and examined E.H. and T.H. Dr. Bar-Shain testified that the examination of the girls revealed normal results. Dr. Bar-Shain explained that the results, however, do not necessarily indicate that sexual trauma did not occur to the girls. Dr. Bar-Shain testified that, due to the age of the girls, and the fact that their tissue is very elastic and can stretch to accommodate the size of a penis, it can be hard to determine trauma. He further testified that often times, examining a patient several weeks after the alleged event alters the results of the examination because the vaginal and anal areas of the body are very vascular and heal in a manner which would not indicate sexual trauma even though it has occurred.
 {¶ 25} Upon cross-examination of the mother, E.H. and T.H., testimony was presented that a few days prior to July 9, 2004, E.H. and T.H. had an argument with their mother. The mother testified that as a result of the argument, she telephoned Children and Family Services and requested they take the girls temporarily from her. Prior to the social worker's arrival, E.H. left and visited with a friend for the evening. She returned home later that night and spoke with the social worker. T.H. testified that she spent the night with her grandmother and returned the following day.
 {¶ 26} At the close of the state's case, the state dismissed counts 8-10 and 14, as well as the firearm specifications on counts 5-7, and 11-14.
 {¶ 27} Appellant then made a motion for acquittal pursuant to Crim.R. 29, which the trial court denied. Thereafter, the defense rested its case and again made a motion for acquittal, which was denied. Finally, the case was presented to the jury for deliberation.
 {¶ 28} The jury found appellant guilty of all remaining counts and the trial court found appellant guilty of count 31. The state dismissed the sexually violent predator specifications and appellant stipulated to the sexual predator classification.
 {¶ 29} The trial court sentenced appellant to a prison term of two life sentences plus 90 years. More specifically, the court sentenced appellant to the following: 3 years for the firearm specifications prior and consecutive to a life sentence on counts one and two; 3 years for the firearm specifications prior and consecutive to 9 years on the base charge of counts 3, 4, 15, 16, 18, 26, 29 and 30; 9 years on each of counts 5-7, 11-13, and 23-25; 17 months on each of counts 17, 20-22, and 27; 7 years on count 19; and 4 years on count 31. The court ordered the firearm specifications to be served consecutively, for a total of 9 years. Counts 1 and 2 are consecutive to one another, as well as to the firearm specifications. Counts 3 and 4 are concurrent with one another, as well as concurrent to counts 1 and 2. The court ordered Counts 5-7 to be served consecutively to each other. Counts 11-13 are concurrent to each other, as are counts 19-15. The court ordered all base charges of the counts to be served consecutively to each other. Additionally, post release control was ordered part of the prison sentence for the maximum period allowed.
 {¶ 30} Appellant now appeals his convictions and sentence and asserts four assignments of error for our review. Appellant's first assignment of error states:
 {¶ 31} "The state failed to present sufficient evidence to sustain a conviction against Appellant."
 {¶ 32} Within this assignment of error, appellant asserts that the state failed to present sufficient evidence that he engaged in the acts of rape, attempted rape, gross sexual imposition and kidnapping.
 {¶ 33} When reviewing a challenge to the sufficiency of the evidence, an appellate court must view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime, proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus, citing Jackson v. Virginia (1979), 443 U.S. 307,99 S. Ct. 2781, 61 L.Ed.2d 560. Thus, a reviewing court will not overturn a conviction for insufficiency of "the evidence unless we find that reasonable minds could not reach the conclusion reached by the trier of fact." State v. Treesh,90 Ohio St.3d 460, 484, 2001-Ohio-4, 739 N.E.2d 749.
 {¶ 34} The jury convicted appellant of various counts of rape as defined in R.C. 2907.02, which reads:
 {¶ 35} "(A) (1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
 {¶ 36} "* * *
 {¶ 37} "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
 {¶ 38} "* * *
 {¶ 39} "(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 40} Also, the jury convicted appellant of various counts of attempted rape. We previously defined rape. R.C. 2923.02
defines attempt as:
 {¶ 41} "(A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."
 {¶ 42} Additionally, appellant was convicted of various counts of kidnapping, in violation of R.C. 2905.01. This statute states in relevant part:
 {¶ 43} "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 {¶ 44} "* * *
 {¶ 45} "(2) To facilitate the commission of any felony or flight thereafter;
 {¶ 46} "* * *
 {¶ 47} "(4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will; * * *."
 {¶ 48} Finally, the jury convicted appellant of various counts of gross sexual imposition. R.C. 2907.05 states:
 {¶ 49} "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 {¶ 50} "(1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force. * * *"
 {¶ 51} Viewing the evidence presented in a light most favorable to the state, the jury reasonably inferred from the evidence that appellant committed a rape, attempted rape, kidnapping and gross sexual imposition upon E.H. The state presented evidence that appellant forced sexual conduct upon E.H. on at least three separate occasions.
 {¶ 52} E.H. testified that one weekend in November of 2002, when she was 12 years old, appellant forced digital penetration and vaginal intercourse upon her while she was visiting at his apartment. On this occasion, he pointed a gun to her head and threatened her that, if she told anyone, he would kill her.
 {¶ 53} Additionally, E.H. testified to another instance which occurred sometime between November of 2002 and July of 2004. She testified that on that occasion, appellant forced vaginal intercourse upon her, but did not threaten her with a weapon on that occasion. He did, however, strike her in the face and again told her he would kill her if she told anyone.
 {¶ 54} Finally, both E.H. and T.H. testified that during the weekend of July 9, 2004, appellant threatened E.H. with a knife and forced digital penetration upon her, as well as sexual intercourse. Additionally, he pointed a gun at her and told her not to tell anyone or he would kill her. This evidence is sufficient to establish that appellant raped, kidnapped and engaged in gross sexual imposition with E.H. on three separate occasions.
 {¶ 55} With respect to T.H., the state presented sufficient evidence that appellant raped, kidnapped and engaged in gross sexual imposition with T.H. She testified that on Friday, July 9, 2004, appellant pushed her head towards his penis in an effort to make her perform oral sex upon him. T.H. refused appellant. She also testified that on Saturday, he digitally penetrated her despite her requests to stop. Finally, on Sunday, while pointing a knife at T.H.'s stomach, appellant performed oral sex upon her. He also pointed a gun at her and told her that if she told anyone, he would kill her.
 {¶ 56} Rickeea confirmed T.H.'s testimony that appellant engaged in sexual conduct with her on Saturday, July 10, 2004. She testified that she awoke on Saturday night at appellant's apartment and witnessed him on top of one of the girls, moving up and down. This testimony confirmed T.H.'s testimony that appellant engaged in sexual conduct with her on that evening.
 {¶ 57} Further, a search of appellant's apartment revealed the knife and gun he used to threaten the girls, along with ammunition. The detectives located the weapons and ammunition in the closet described by E.H. and T.H. The weapons retrieved matched the description given by the girls.
 {¶ 58} Viewing the aforementioned evidence in a light most favorable to the state, we find that sufficient evidence existed to support appellant's convictions for rape, attempted rape, kidnapping and gross sexual imposition. Accordingly, the first assignment of error is without merit.
 {¶ 59} Appellant's second assignment of error states:
 {¶ 60} "Appellant's convictions are against the manifest weight of the evidence."
 {¶ 61} In State v. Thompkins, 78 Ohio St.3d 380, 388,1997-Ohio-52, 678 N.E.2d 541, the court illuminated its test for manifest weight of the evidence as follows:
 {¶ 62} "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' Black's [Law Dictionary (6 Ed. 1990)], at 1594."
 {¶ 63} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Id., citing Tibbs v. Florida (1982), 457 U.S. 31,45, 102 S.Ct. 2211, 72 L.Ed.2d 652. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See Statev. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 64} The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
 {¶ 65} In his brief, appellant asserts that his convictions were against the manifest weight of the evidence because the state failed to present credible evidence that appellant committed rape, attempted rape, kidnapping and gross sexual imposition upon E.H. and T.H. In asserting this proposition, appellant relies on inconsistencies in the girls' testimony.
 {¶ 66} First, appellant questions the girls' credibility because they had an argument with their mother days before the incident with appellant. We find appellant's argument without merit. Both girls and the mother were cross-examined extensively regarding this argument. Therefore, the jury was fully aware of this altercation and concluded that it did not render E.H.'s, T.H.'s, and their mother's testimony incredible. Weighing all the evidence and reasonable inferences, we cannot disagree with the jury in that regard.
 {¶ 67} Next, appellant questions the fact that the girls did not tell anyone about the sexual conduct with appellant until one week after the incidents. Additionally, appellant directs this court to the fact that the girls did not tell the C.M.H.A. police about the incidents while they were at appellant's apartment. The girls explained they were afraid to tell anyone about the incident because appellant threatened that he would kill them if they told. We find that the jury did not lose its way in believing the girls' testimony.
 {¶ 68} Also, appellant asserts that Rickeea's testimony that she saw appellant on top of either E.H. or T.H. is not credible. Appellant contends that by testifying, Rickeea is simply getting revenge for appellant evicting her, her mother, and their friend from his apartment that weekend. Again, Ms. Padgett and Rickeea were extensively cross-examined regarding their alleged resentment towards appellant. As evidenced by the jury's verdict, they clearly did not believe such a motive existed. Weighing all the evidence, we cannot disagree with the jury that Rickeea's and Ms. Padgett's testimony was credible.
 {¶ 69} Finally, appellant asserts that because the state failed to present physical evidence of any type of trauma, the jury clearly lost its way in finding appellant guilty of rape, attempted rape, kidnapping and gross sexual imposition. As stated in our analysis of appellant's first assignment of error, we find that the state presented a plethora of additional evidence establishing the elements of the various offenses. Additionally, as Dr. Bar-Shain testified, normal results after a vaginal examination do not necessarily indicate that sexual trauma did not occur. Dr. Bar-Shain explained that it can be hard to determine the existence of trauma in this case because of the age of the girls and the fact that their tissue is very elastic and can stretch to accommodate the size of penis. He further testified that often times, examining a patient several weeks after the alleged event alters the results of the examination because the vaginal and anal areas of the body are very vascular and heal in a manner which would not indicate sexual trauma even though it has occurred. In light of this evidence, we cannot conclude that the jury lost its way in finding appellant guilty of rape, attempted rape, gross sexual imposition, and kidnapping even though the girl's vaginal examination revealed normal results.
 {¶ 70} Weighing all the evidence and reasonable inferences, we find that the jury could reasonably find appellant guilty of the various counts of rape, attempted rape, kidnapping and gross sexual imposition. Accordingly, appellant's second assignment of error is without merit.
 {¶ 71} Appellant's third assignment of error states:
 {¶ 72} "The trial court erred when it sentenced Appellant to prison on counts 11, 12 and 13 (kidnapping) when it did not instruct the jury as to a victim or dates as to those counts."
 {¶ 73} Within this assignment of error, appellant generally asserts that his conviction cannot stand because the trial court did not specifically identify, during the jury instructions, who the victim or victims were and did not apply any dates to those counts. In his brief, however, appellant fails to cite to any legal authority to support his contentions.
 {¶ 74} "An appellate court may disregard an assignment of error pursuant to App.R. 12(A)(2) if an appellant fails to cite to any legal authority in support of an argument as required by App.R. 16(A)(7)." State v. Armstrong, Cuyahoga App. Nos. 87456, 87457, 2006-Ohio-5447. "`If an argument exists that can support this assignment of error, it is not this court's duty to root it out.'" Id., quoting Cardone v. Cardone (May 6, 1998), Summit App. Nos. 18349, 18673.
 {¶ 75} In this assignment of error, appellant failed to comply with App.R. 16(A) as he failed to provide any legal authority in support of his argument. Accordingly, as an appellant "bears the burden of affirmatively demonstrating error on appeal," this court must overrule appellant's third assignment of error pursuant to App.R. 12(A)(2). Concord Twp. Trustees v.Hazelwood Builders (Mar. 23, 2001), Lake App. No. 2000-L-040.
 {¶ 76} Appellant's fourth assignment of error states:
 {¶ 77} "The trial court erred by ordering Appellant to serve a consecutive sentence without first considering a concurrent sentence and by making findings not supported by the record."
 {¶ 78} In his final assignment of error, appellant contends that the trial court erred in ordering consecutive sentences without first considering concurrent sentences and by making findings not supported by the record. Appellant recognizes Statev. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, which was decided after he filed his notice of appeal, but before he filed his appellate brief. Appellant, however, maintains thatFoster is inapplicable to him because it violates his rights against ex post facto legislation and his due process rights.
 {¶ 79} We find appellant's argument without merit and applyFoster to this case. In Foster, the Supreme Court of Ohio found several provisions of S.B. 2 unconstitutional, including R.C. 2929.14(E)(4), 2929.14(A), R.C. 2929.14(B) and (C), and2929.19(B)(2). Foster, supra, applying United States v.Booker (2005), 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621;Blakely v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531,159 L.Ed.2d 403; Apprendi v. New Jersey (2000), 530 U.S. 466,120 S.Ct. 2348, 147 L.Ed.2d 435. Therefore, the court severed and excised these provisions from S.B. 2 and ordered that cases on direct review be remanded for a new sentencing hearing. Foster,
supra at 29-31. The court explained that during resentencing, the trial court has full discretion to impose a prison sentence within the statutory range and is no longer required to make findings or state reasons for imposing maximum, consecutive, or more than the minimum sentence. Id. at paragraph seven of the syllabus; see, also, State v. Mathis, 109 Ohio St.3d 54,2006-Ohio-855, 846 N.E.2d 1, paragraph three of the syllabus.
 {¶ 80} In the instant matter, the trial court relied on unconstitutional provisions when it imposed appellant's consecutive sentences. Thus, appellate's sentences are void. Accordingly, we vacate his sentences and remand the case to the trial court for resentencing in accordance with Foster.
Appellant's fourth assignment of error is sustained.
 {¶ 81} We further find appellant's argument that Foster
violates his rights against ex post facto legislation and due process rights to be premature. This issue is not ripe for review because appellant has yet to be sentenced under Foster. State v.Erwin, Cuyahoga App. No. 87333, 2006-Ohio-4498; State v.McCarroll, Cuyahoga App. No. 86901, 2006-Ohio-3010; State v.Chambers, Cuyahoga App. No. 87221, 2006-Ohio-4889; State v.Rady, Lake App. No. 2006-L-012, 2006-Ohio-3434; State v.Pitts, Allen App. No. 01-06-02, 2006-Ohio-2796; State v.Sanchez, Defiance App. No. 4-05-47, 2006-Ohio-2141. Accordingly, this argument is without merit.
Conviction affirmed, sentence vacated and remanded for resentencing.
It is ordered that appellee and appellant split the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, J., and Blackmon, J., Concur.