JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Cory Henderson (appellant) appeals his convictions for aggravated riot with firearm specifications. After reviewing the facts of the case and pertinent law, we affirm.
 I. {¶ 2} Shortly after midnight on July 26, 2005, a group of teenage girls began arguing in a Cleveland neighborhood on East 74th Street. One of the teenagers, Ramia Pitts, called her cousin, Janice Simpson, who promptly arrived on the scene with Ralisa Pitts and Neashell Campbell, in a car driven by a male named Josh. Lisa Debase, who owns a home in the area and is also an aunt to the Pitts sisters, told the carload of people that everything was under control and to leave. However, someone threw a brick at Josh's car, and he became part of the arguing crowd. At this time, appellant and a man named Porky arrived in another vehicle, and appellant urged the girls that he knew to stop standing there and to start fighting.
 {¶ 3} It was at this point that the altercation turned physical and, according to the testimony of Simpson, Ralisa and Ramia Pitts, Campbell and Debase, appellant had a gun with which he allegedly hit Josh and Ralisa Pitts.
 {¶ 4} On April 21, 2006, appellant was indicted for various counts, including aggravated riot, with one-and three-year firearm specifications, and having a weapon while under disability. On August 11, 2006, a jury found appellant guilty of two counts of aggravated riot in violation of R.C. 2917.02(A)(2) and (3), both with one-year firearm specifications pursuant to R.C. 2941.141, and the court found *Page 4 
appellant guilty of having a weapon while under disability in violation of R.C. 2923.13. On September 12, 2006, the court sentenced appellant to two years in prison, to run consecutive to a six month prison sentence appellant received in an unrelated case.
 II. {¶ 5} In his first assignment of error, appellant argues that he "received ineffective assistance of counsel in violation of his rights pursuant to the Sixth Amendment to the United States Constitution and Section 10, Article 1 of the Ohio Constitution." Specifically, appellant argues that defense counsel solicited unfavorable testimony from a state witness and referred to appellant's prior juvenile delinquency adjudication in his opening statement.
 {¶ 6} To substantiate a claim of ineffective assistance of counsel, an appellant must demonstrate that 1) the performance of defense counsel was seriously flawed and deficient, and 2) the result of appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. Strickland v. Washington (1984), 466 U.S. 668; State v. Brooks (1986), 25 Ohio St.3d 144. In State v.Bradley, the Ohio Supreme Court truncated this standard, holding that reviewing courts need not examine counsel's performance if appellant fails to prove the second prong of prejudicial effect. State v.Bradley (1989), 42 Ohio St.3d 136. "The object of an ineffectiveness claim is not to grade counsel's performance." Id. at 142. *Page 5 
 {¶ 7} In the instant case, appellant argues that while defense counsel kept his prior record from the jury by trying the weapon while under disability charge to the court, defense counsel was ineffective when he said the following in his opening statement:
 "* * * I'll tell you why [appellant] left. Because he has learned his lesson.
 Cory [has] already, as a juvenile, spent time in a detention home for fighting with somebody else and so that night in that crowd in that situation, having learned what he learned, after being through what he had been through, said, `I'm not going back for somebody else's cat fight, for somebody else's boyfriend, or somebody else who dissed someone that night,' and he left and he went four blocks away and the incident proceeded."
 {¶ 8} This statement is not an example of ineffective assistance of counsel for two reasons. First, counsel's defense strategy was that appellant did not instigate or mastermind this "riot"; rather, he was caught in the middle and removed himself from the situation because he knew better after his first offense. "In reviewing the trial strategy of counsel, we must extend great deference to counsel's decisions. Debatable trial tactics and strategies generally do not constitute ineffective assistance of counsel." State v. Matthews, Franklin App. No. 03AP-140, 2003-Ohio-6307 (citing State v. Clayton (1980),62 Ohio St.2d 45, 49). Second, as will be further discussed in the remaining assignments of error, there is no showing that the outcome of appellant's trial would have been different but for this opening statement, *Page 6 
as the eyewitness testimonial evidence against appellant was enough to convict him of the aggravated riot and firearm charges.
 {¶ 9} Appellant also argues that "defense counsel aided the State by extracting testimony that the prosecution failed to elicit." During the State's direct examination of Campbell, a gun was not mentioned. However, defense counsel's first question to Campbell during cross-examination was, "Did you see a gun that night?" Campbell replied that she did. During the State's redirect examination, Campbell expanded on this statement, noting that the gun she saw was in appellant's hands.
 {¶ 10} While defense counsel's strategy in bringing the gun up may have been to show that a material witness did not see appellant with a gun, this line of questioning squarely fails Strickland's second prong. Without Campbell's testimony, the State presented four eyewitnesses that saw appellant with a gun in his hands on the night in question, and this is enough to support appellant's convictions. Accordingly, appellant's first assignment of error is overruled.
 III. {¶ 11} In his second assignment of error, appellant argues that "the evidence introduced by the state pertaining to the firearm specification, in violation of R.C. 2941.141, was insufficient to sustain a conviction." Specifically, appellant argues that there was no evidence that the gun he was allegedly seen with was operable. When reviewing sufficiency of the evidence, an appellate court must determine *Page 7 
"[w]hether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259.
 {¶ 12} R.C. 2923.11(B)(1) defines "firearm" as follows: "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant * * * [including] an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." R.C. 2923.11(B)(2) further states that in determining a firearm's operability, "the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm."
 {¶ 13} In State v. Nicholson, Cuyahoga App. No. 85977, 2006-Ohio-1569, we held the following:
 "Furthermore, in State v. Thompkins (1997), 78 Ohio St.3d 380, the Ohio Supreme Court rejected the view that the circumstantial proof of operability must consist of certain recognized indicia, such as bullets, the smell of gunpowder, bullet holes, or verbal threats by the user of the weapon that he or she would shoot the victim.
 * * *
 "Thus, operability or potential operability may be proven if an individual `brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense * * *.' Id. at 384."
 {¶ 14} The facts of the instant case are somewhat similar to State v.Armstrong, Cuyahoga App. Nos. 87456 and 87457, 2006-Ohio-5447. InArmstrong, a witness testified that he saw the defendant "pull out a handgun and state that no one was going to jump his *Page 8 
brother. Additionally, [witness] testified that [appellant] hit Andre with the handgun while Andre was lying on the ground." TheArmstrong court upheld both one-and three-year firearm specifications given the above facts. Id.
 {¶ 15} In the instant case, Simpson testified that appellant struck Ralisa Pitts in the face with a black pistol, similar to the type of gun that police officers carry. Ralisa Pitts testified that appellant hit both her and Josh in the head with a gun, which "was black and it looked like the police — like the guns the police officers carry." Neashell Campbell testified that she saw appellant beating Josh with a gun. Ramia Pitts testified that she saw Porky holding a gun, about to hit Josh, when appellant said to Porky, "Give me the gun, I'll hit him with it." Ramia then saw Porky give the gun to appellant, who struck Josh with the gun. Ramia testified that immediately after the fight, her sister Ralisa told her that appellant hit her [Ralisa] with a gun. Ramia also testified that she did not get a good look at the gun. Finally, Debase testified that she was standing next to Josh when appellant started hitting Josh with a black gun. Debase also testified that immediately after the fight, her daughter Ralisa told her that appellant hit her [Ralisa] with a gun.
 {¶ 16} While we realize that the record is void of an overt threat by appellant to use the gun that no less than five people testified to him having, we follow Armstrong and hold that the totality of the circumstances implies that appellant had an operable firearm while committing the offense of aggravated riot, as contemplated by R.C.2941.141, and this is sufficient evidence for a conviction. *Page 9 
 {¶ 17} Appellant's second assignment of error is overruled.
 IV. {¶ 18} In his final assignment of error, appellant argues that his "convictions for aggravated riot were against the manifest weight of the evidence." The proper test for an appellate court reviewing a manifest weight of the evidence claim is as follows:
 "The appellate court sits as the `thirteenth juror' and, reviewing the entire record, weighs all the reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 19} Pertinent to this case and pursuant to R.C. 2917.02(A), aggravated riot is defined as follows: "No person shall participate with four or more others in a course of disorderly conduct * * * (2) [w]ith purpose to commit or facilitate the commission of any offense of violence; [or] (3) [w]hen the offender * * * has, * * * uses, or intends to use a deadly weapon * * *."
 {¶ 20} In the instant case, the testimony is consistent that there were fifteen to twenty people engaged in what started as a "cat fight," with teenage girls arguing, and turned into a full-fledged brawl after appellant arrived and told the girls to start fighting. According to Ralisa Pitts, appellant said, "Why is you all standing here? Go beat those bitches up." According to Debase, appellant said, "What the hell you all waiting on? Kick them bitches' ass." The witnesses all testified that punches *Page 10 
were thrown, people were kicked, and there were allegations that appellant also hit people with a small hammer. We cannot say that the jury lost its way in convicting appellant of the two counts of aggravated rioting, nor that a manifest miscarriage of justice occurred. Appellant's final assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 JAMES J. SWEENEY, P.J., and MELODY J. STEWART, J., CONCUR. *Page 1